**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **ANYI LORENA FAJARDO GUIZA** | **CIVIL ACTION NO. 6:26-CV-02377 SEC P** |
| **VERSUS** | **JUDGE EDWARDS** |
| **BRIAN ACUNA ET AL** | **MAG. JUDGE PEREZ-MONTES** |

**MEMORANDUM RULING AND ORDER**

Before the Court is a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 filed by pro se Petitioner Anyi Lorena Fajardo Guiza ("Fajardo-Guiza"), an immigration detainee at the South Louisiana ICE Processing Center in Basile, Louisiana. ECF Nos. 1, 7, 8. The Government filed a Response on September 29, 2026. ECF No. 11.

After careful consideration of the record, the parties' memoranda, and the applicable law, the Petition is GRANTED.

## I. Background

Fajardo-Guiza is a native and citizen of Colombia who entered the United States on or about December 8, 2023, near Eagle Pass, Texas. ECF No. 11-1 at 1. DHS served her with a Notice to Appear ("NTA") charging that she was present in the United States without admission or parole, in violation of INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i). *Id.* According to the Form I-213 Record of Deportable/Inadmissible Alien, Fajardo-Guiza was "released with an NTA" the same day. ECF No. 11-2 at 2. The record does not contain a release order.

Fajardo-Guiza has an approved Form I-765 Application for Employment Authorization, and a pending Form I-589 Application for Asylum and for Withholding of Removal. ECF No. 11-2 at 2.

Fajardo-Guiza asserts that she was detained when she appeared for a routine appointment. ECF No. 7 at 6. The Form I-213 corroborates her claim, indicating that, when Fajardo-Guiza reported to the Enforcement and Removal Operations office on May 19, she "was placed in handcuffs" and "taken into custody for her unlawful presence in the United States." ECF No. 11-2 at 2.[1] Two days later, DHS issued a warrant for Fajardo-Guiza's arrest pursuant to §§ 236 and 287 of the INA and 8 C.F.R. pt. 287. ECF No. 11-3 at 1.

According to the EOIR Automated Case Information System, Fajardo-Guiza has an individual internet-based hearing on October 28, 2026.

## II. <u>Law and Analysis</u>

Fajardo-Guiza contends that the Government violated her constitutional rights by arresting her at a routine appointment; failing to provide her with a bond hearing; and transferring her through five states, which prevents her from obtaining legal representation and appearing before an immigration judge. ECF No. 7 at 6. Liberally construed, Fajardo-Guiza's allegations also challenge the Government's decision to re-detain her after previously releasing her, without providing an individualized opportunity to contest that decision.

[1] The I-213 states that Fajardo-Guiza was detained on May 19, 2025 (ECF No. 11-2 at 2), but Fajardo-Guiza indicates that she was detained in May 2026 (ECF No. 7 at 4). Thus, the reference to 2025 appears to be a typographical error.

The Government argues that Fajardo-Guiza is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) and that her detention violates neither substantive nor procedural due process. Alternatively, it urges the Court not to grant relief before the Fifth Circuit resolves the pending en banc proceedings in *Sosnava-Rodriguez v. Ortega*. ECF No. 11 at 1-5.

### A. <u>Statutory Detention Authority</u>

In *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026), the Fifth Circuit held that noncitizens who entered without inspection and remained present in the United States are applicants for admission subject to mandatory detention under § 1225(b)(2). Accordingly, *Buenrostro-Mendez* forecloses any contention that Fajardo-Guiza is entitled to habeas relief solely because § 1226(a), rather than § 1225(b)(2), governs her custody. That conclusion, however, does not resolve Fajardo-Guiza's constitutional claim.

### B. <u>Procedural Due Process</u>

The question is whether, after DHS affirmatively processed Fajardo-Guiza, released her, and knowingly permitted her to remain at liberty for an extended period, the Fifth Amendment required some individualized process before DHS revoked that liberty and returned her to physical custody.

As this Court has frequently recognized, the question of whether Congress authorized detention under § 1225(b) is analytically distinct from whether the Government may revoke a liberty interest without affording constitutionally adequate process. *See Diallo v. Trump*, 1:25-CV-2012, 2026 WL 1230389 (W.D. La.

Mar. 5, 2026); *Kilic v. Acuna*, 1:25-CV-01928, 2026 WL 1652575 (W.D. La. June 8, 2026); *Ghughunishvili v. Trump*, 3:26-CV-00086, ECF No. 13 (W.D. La. Mar. 20, 2026); *Garcia-Gil v. Acuna*, 1:26-CV-00207, ECF No. 10 (W.D. La. Apr. 29, 2026); *Andrade-Cunalata v. Wyatt*, No. 3:26-CV-01155 (W.D. La. July 16, 2026); *Gomez v. Acuna*, No. 1:26-CV-00220, 2026 WL 2111943 (W.D. La. July 22, 2026); *Sonuk v. Acuna*, No. 1:26-CV-01611, 2026 WL 2771703 (W.D. La. Sept. 17, 2026); *Isakova v. South Louisiana ICE Processing Center*, No. 6:26-CV-01481, 2026 WL 2790305 (W.D. La. Sept. 17, 2026).

Neither *Dep't of Homeland Sec. v. Thuraissigiam,* 591 U.S. 103 (2020), *Jennings v. Rodriguez*, 583 U.S. 281 (2018), nor *Buenrostro-Mendez* forecloses Fajardo-Guiza's constitutional claim. As this Court observed in *Diallo*, those decisions address Congress's statutory detention authority and the scope of constitutional protections afforded applicants for admission, but they do not answer the distinct question whether due process permits the Government to revoke an existing liberty interest without any individualized procedure.

Accordingly, the Court again applies the balancing test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Under *Mathews*, courts consider: (1) the private interest affected; (2) the risk of an erroneous deprivation through the procedures used and the probable value of additional procedural safeguards; and (3) the Government's interests, including the burdens of additional procedures.

**1. Private Interest**

"The interest in being free from physical detention" is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *Martinez v. Noem*, 5:25-CV-1007, 2025 WL 2598379, at *2 (W.D. Tex. Sept. 8, 2025). Although *Buenrostro-Mendez* establishes that § 1225(b) authorizes mandatory detention, it does not eliminate the private interest that developed after the Government processed Fajardo-Guiza, affirmatively released her, and knowingly permitted her to remain at liberty for more than two years.

Unlike cases involving individuals who lived in the United States without the Government's knowledge until their eventual apprehension, *see Sosnava-Rodriguez v. Ortega*, 26-50183, 2026 WL 1906557, at *15 (5th Cir. July 2, 2026), *reh'g en banc granted, opinion vacated*, 2026 WL 2014647 (5th Cir. July 10, 2026), Fajardo-Guiza's re-detention did not arise from the Government's first discovery of her presence in the United States. Rather, DHS encountered her near the border, served her with an NTA, and released her. ECF No. 11-2 at 2. Fajardo-Guiza alleges that she has fully cooperated with ICE, attended all scheduled hearings, and kept immigration officials informed of her location. ECF No. 1 at 2. In fact, she was apprehended while reporting for a routine immigration appointment. The Government does not contend that Fajardo-Guiza absconded, committed a crime, violated any conditions of her release, or otherwise engaged in conduct prompting DHS to reverse its prior decision permitting her to remain in the community.

Thus, regardless of the precise statutory authority for Fajardo-Guiza's initial release, DHS affirmatively released her and permitted her to remain at liberty for approximately two and a half years before re-detaining her. The first factor favors Fajardo-Guiza.

**2. Risk of Erroneous Deprivation**

The second *Mathews* factor likewise favors Fajardo-Guiza. The risk of erroneous deprivation is substantial where the Government revokes existing conditional liberty without advance notice, an opportunity to respond, or an individualized process. The Form I-213 states that she was "taken into custody for her unlawful presence in the United States." ECF No. 11-2 at 2. However, DHS previously released Fajardo-Guiza, and although the Government does not provide the terms of that release, it identifies no violation of release conditions, changed circumstances, or individualized determination that she posed a flight risk or danger to the community. Nor does the Government identify any pre-revocation notice, opportunity to be heard, or individualized determination explaining why revocation and immediate detention were warranted.

In fact, according to the Government's Form I-213, Fajardo-Guiza was apprehended and placed in handcuffs on May 19, 2026, while the Form I-200 administrative arrest warrant is dated May 21, 2026, two days after her apprehension. ECF No. 11-3 at 1. The Government does not explain this discrepancy or establish that Fajardo-Guiza received any individualized process before she was re-detained.

Minimal procedural safeguards could reduce the risk of erroneous deprivation without altering the statutory detention framework. Notice of the basis for re-detention and an opportunity to contest the factual predicates for revoking Fajardo-Guiza's previously granted liberty would provide meaningful protection while leaving the ultimate statutory detention determination intact. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (recognizing, in the parole context, that conditional liberty, even when subject to revocation, is a protected liberty interest).

Because Fajardo-Guiza received no individualized process before her Government-granted liberty was revoked, the risk of erroneous deprivation weighs in favor of requiring additional procedural safeguards.

**3. Government's Interest**

The Government unquestionably possesses a substantial interest in enforcing the immigration laws enacted by Congress and in detaining those individuals whom Congress has made subject to § 1225(b).

Providing limited, individualized procedural protections before revoking a previously granted release does not displace or negate § 1225(b)(2)(A). Rather, it requires only that the Government afford constitutionally adequate procedures before withdrawing liberty it has previously conferred. Due process protections remain applicable even when government authorities possess discretion to revoke supervision. *See Mendoza v. Noem*, 823 F. Supp. 3d 636, 649 (W.D. Tex. Feb. 26, 2026); *Lepe Hernandez v. Noem,* 5:26-CV-0694, 2026 WL 990024, at *4 (W.D. Tex. Apr. 13, 2026).

The Government has not shown that providing notice and an opportunity to be heard would impose a burden sufficient to outweigh Fajordo-Guiza's liberty interest and the risk of erroneous deprivation.

**4. Balancing the Factors**

Balancing the three *Mathews* factors, the Court concludes that the Government violated Fajardo-Guiza's procedural due process rights by revoking her Government-granted liberty and re-detaining her without affording any individualized process.

This conclusion is consistent with this Court's prior decisions recognizing that *Buenrostro-Mendez* resolves the statutory question of detention authority, but not the separate constitutional question of whether the Government may revoke an established liberty interest without affording due process. It is also consistent with this Court's prior decisions distinguishing *Sosnava-Rodriguez*. *See Gomez*, 2026 WL 2111943, at *2; *Sonuk*, 2026 WL 2771703, at *2-3; *Isakova*, 2026 WL 2790305, at *3-4.

Because the Court concludes that Fajardo-Guiza is entitled to relief on her procedural due process claim, it need not address her remaining arguments for release.

## III. <u>Conclusion</u>

For the foregoing reasons, IT IS HEREBY ORDERED that the Petition for Writ of Habeas Corpus (ECF Nos. 1, 7, 8) is GRANTED. The Government SHALL RELEASE Fajardo-Guiza from custody within seven days after entry of this Order,

subject to the conditions previously imposed or such reasonable conditions as DHS may lawfully impose, return her personal property, and provide sufficient advance notice of her release to allow her to make travel arrangements.

IT IS FURTHER ORDERED that the Government shall file a notice of compliance within 24 hours after Fajardo-Guiza's release.

THUS ORDERED AND SIGNED in Chambers this 14th day of October, 2026.

JERRY EDWARDS, JR.
UNITED STATES DISTRICT JUDGE